FILED
2008 Jun-26  PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

WANDA GAIL SMITH,

     PLAINTIFF,

VS.                          CASE NO.: CV-07-J-1034-NW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     DEFENDANT.

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This Court has jurisdiction pursuant to 42 U.S.C. § 405.  The plaintiff is seeking reversal or remand of a final decision of the Commissioner of Social Security. All administrative remedies have been exhausted.

### Procedural Background

The plaintiff applied for disability insurance benefits primarily due to pain in her back and knees, GERD/reflux, a vertebral hemangioma, and a nodule on her thyroid (R. 79).  She further suffers from dizziness (R. 282), her hands go to sleep (R. 282), and she is unable to walk, sit, squat (R. 88), reach overhead, bend, push/pull, grasp, or carry (R. 286-287).  The administrative proceedings leading to this action began on March 24, 2005, when the plaintiff filed an application for disability insurance benefits (R. 38).  The  application was denied (R. 27-33) and the plaintiff

requested a hearing, which was held in front of an administrative law judge (ALJ) on August 29, 2006 (R. 273-299).   The ALJ thereafter rendered an opinion finding that the plaintiff was not under a disability (R. 12-18).   The plaintiff's request for administrative review of the ALJ's decision by the Appeals Council was denied on March 30, 2007 (R. 5-7).   The ALJ's decision thus became the final order of the Commissioner of Social Security.   *See* 42 U.S.C.§ 405(g).   This action for judicial review of the agency action followed (doc. 1).

The plaintiff argues that the ALJ's finding that the plaintiff can perform light work is not based on substantial evidence and the ALJ's credibility finding is not based on substantial evidence.  Plaintiff's memorandum at 1.  At the hearing, the ALJ asked the vocational expert ("VE") a hypothetical which included no limitations from pain, no limitations on hand movements, assumed an unlimited ability to push/pull and the ability to walk or stand for six hours in an eight hour day, as well as an ability to sit for six hours in an eight hour day (R. 295).  When asked to assume a limitation of only occasional use of the hands, the VE testified it would preclude all jobs she mentioned and most sedentary work as well (R. 297-298).   The need to recline, as well as moderately severe to severe pain, would preclude all work (R. 298).   The ALJ found that the plaintiff could return to her past work as a cashier, manager and receptionist (R. 17), and held that the plaintiff's allegations of pain and limitations

were not entirely credible (R. 16).   He concluded that the plaintiff "is clearly exaggerating her condition, and the medical evidence fails to confirm her alleged limitations" (R. 17).  The ALJ also concluded that the state agency medical consultant was entitled to controlling weight, assumably because "the undersigned agrees the claimant is capable of returning to her past relevant work as a cashier" (R. 17).

The court has considered the record and the briefs of the parties.  For the reasons set forth herein, this case is **REVERSED and REMANDED** to the Agency to further develop the record as instructed herein.

### Factual Background

The plaintiff was born December 15, 1951, completed the sixth grade, and later received a GED (R. 276-277).  The plaintiff testified that she stopped working March 1, 2004, because she would go home from work and be in bed all evening so that she would be able to return to work the next day (R. 279).  She stated she could not stand for very long, and has to sit in a recliner with her legs under her to relieve the pressure in her back and right hip (R. 280).  Her neck bothers her and her hands go to sleep (R. 282, 291).  She had pain in her wrists (R. 290).  She is only able to sleep three and a half to four hours a night due to pain in her hip and back (R. 283).  She cannot extend or bend, reach overhead (R. 286), bend, push/pull, grasp, or lift and carry a gallon of milk (R. 287).  She also has headaches and vertigo (R. 288).  In her

3

last job, her employer tried to help her stock,  had three different chairs for her to choose from, and reduced her hours to three to four a day, but she was unable to keep working even with these accommodation (R. 289-290).   Her doctor prescribed Darvocet, which makes her drowsy but does not help with the pain (R. 291).   Her condition is worsening (R. 292).

The plaintiff has past relevant work as a cashier, which is light and semi-skilled; store manager, which is light and skilled; and receptionist, which is sedentary and semi-skilled (R. 294).  The vocational expert (VE) testified at the hearing that, assuming an individual with the same age, education and prior work experience of the plaintiff, who could perform light work, with no limitations on push and pull, reaching overhead or foot controls; could stand and/or walk for six hours in an eight hour day and sit for six hours in an eight hour day; could frequently climb ramps and stairs but never use ladders, ropes or scaffolds; and could occasionally balance, stoop, kneel, crouch and crawl; and no unprotected heights or hazardous machinery; such an individual could perform plaintiff's past relevant work as a receptionist or cashier (R. 295).

The court finds the following medical records to be relevant:

A February 2003 exam with plaintiff's then treating physician, Dr. Daniel E. Davis, noted the plaintiff suffered from benign positional vertigo, history of

rheumatic fever, gastroesophageal reflux, a right thyroid nodule, and atypical chest pain (R. 118).  She complained of bilateral hand numbness and tingling, and elbow pain (R. 118).  He believed she had symptoms suggestive of bilateral carpal tunnel syndrome and recommended wrist splints (R. 119).  In February and October 2003 thyroid ultrasounds found a goiter present, unchanged from prior ultrasounds (R. 142, 153).  A bone density scan in May 2003 reflected mild osteopenia of the spine and borderline osteopenia of the hips (R. 149).  Further follow-up in October 2003 reflected that the plaintiff complained of back pain which Dr. Davis believed to result from lumbosacral strain and encouraged her to avoid heavy lifting.[1]  Dr. Davis also found the plaintiff to suffer from "significant anxiety symptoms" (R. 115).

Plaintiff's treating physician Dr. David E. Bachofer noted the plaintiff complained of aches and pains in her joints in November 2004 (R. 224).  A diagnosis of acute arthritis is reflected (R. 224).  An MRI of the lumbar spine found mild degenerating lumbar disc disease (R. 205).  He saw the plaintiff in May 2005 and noted atypical chest pain, continued the plaintiff on Antivert for dizziness, prescribed Celebrex for osteoarthritis, and slight edema for which she was to elevate her lower extremities (R. 218-219).  Dr. Bachofer further noted that the plaintiff's joints and arthritis had been acting up (R. 218).  In June 2006 he noted that the plaintiff was

---

[1]Dr. Davis believed this resulted from the plaintiff lifting her 13 month old granddaughter (R. 113-114).

doing better, but recommended she continue to elevate her extremities, gave her an inhaler for COPD and encouraged her to quit smoking (R. 216).

Dr. Bachofer referred the plaintiff to Dr. Roger Ray in December 2004 for low back pain (R. 203). Dr. Ray noted the plaintiff appeared uncomfortable, diagnosed her with a vertebral hemangioma, and discussed treatment options (R. 203). His January 2005 office note reflects that the plaintiff still had a catch in her right hip when she walked and he opined that the plaintiff suffered from neurogenic claudication[2] (R. 202). In February 2005 Dr. Ray noted that the plaintiff had a normal gait, was trying to get Social Security benefits and suffered from lumbar radiculopathy (R. 245). Testing found diffuse bulging annulus and bilateral facet osteoarthritis at L5-S1; mild diffuse bulging annulus and bilateral facet osteoarthritis at L4-L5; bilateral facet osteoarthritis at L3-L4; and mild bilateral facet osteoarthritis at L2-L3 (R. 235). In August 2005 Dr. Ray added carpal tunnel syndrome to his diagnoses (R. 244). He also noted plaintiff's complaints of paresthesias in both legs, numbness in both hands and pain in her right shoulder (R. 244). Dr. Ray's September record reflects a continued diagnosis of carpal tunnel syndrome even though electrical studies failed to confirm this (R. 243). However, in September 2005 the plaintiff did report improvement and that she could clean her house (R. 243).

---

[2]This refers to cramplike pains in the legs (usually the calf muscles, but may be in the thigh muscles) caused by poor circulation of the blood to the leg muscles.

6

In April 2006 Dr Ray noted that the plaintiff complained of pain when she walked radiating into her right leg, that she had gradually worsened and was unable to perform her usual daily routine (R. 242).  He diagnosed her as suffering from lumbar spinal stenosis and prescribed a Medrol Dosepak and Darvocet (R. 242). Upon follow-up, the plaintiff still complained of pain in her low back and right hip (R. 241).  Dr. Ray noted the Darvocet was poorly tolerated, the plaintiff appeared uncomfortable, and had pain with extension and forward bending (R. 241).  Further testing confirmed mild stenosis at L4-5 (R. 240).

A May 2006 lumbar myelogram was normal (R. 253), and a CT the same date noted only a hemangioma at L1 (R. 252).  X-rays that date also identified degenerative changes of the facet joints bilaterally at L4-5 and L5-S1 (R. 251).  Other studies noted mild degenerating lumbar disc disease (R. 246, 248).

The plaintiff was seen in an emergency room for tinnitus in May 2006 (R. 228). In June 2006, plaintiff's treating physician Dr. E. E. Walker noted the plaintiff suffered from dizziness on rare occasions (R. 256).

The ALJ found that the plaintiff suffered from degenerative disc disease and gastroesophageal reflux, which are severe impairments, but neither of which, alone or in combination, met or equaled any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 14).  The ALJ concluded that the plaintiff could perform

light work activities, including climbing ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl (R. 16).  The ALJ opined that while there was evidence of conditions which could produce some of the symptoms about which plaintiff complained, her allegations of the intensity, persistence and limiting effects of those symptoms were not entirely credible (R. 16).  The ALJ did not address the credibility of plaintiff's allegations of pain.

The ALJ stated that the medical records show that the plaintiff has degenerative disc disease of the lumbar spine, but there was no statement in the medical records that she must elevate her legs (R. 16).  He discounted her allegations of dizziness because the plaintiff was noted to be in no acute distress (R. 16).  The ALJ further ignored the plaintiff's allegations of hand numbness and carpal tunnel syndrome, trouble reaching over her head, inability to bend, push and pull, and grasp and hold things because on August 25, 2005, the plaintiff saw Dr. Ray and Dr. Ray found no Tinel's sign at either wrist and a nerve conduction study of the upper extremities was "normal" (R. 17). The ALJ gave controlling weight to the state agency medical consultants because they concluded the plaintiff could perform at the light level of exertion (R. 17).  The ALJ did not mention the weight he was attributing to other medical evidence in the record.   Additionally, no evidence by a treating or a

consultative physician as to the plaintiff's physical limitations, other than the state agency opinion, appears in the record.

## Standard of Review

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work.  If the claimant is successful the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy.  *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987).

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the  correct legal standards were applied.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir.1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990).   "Substantial  evidence"  is  more  than  a  scintilla,  but  less  than  a preponderance.  It is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206

(1938)); *Miles v. Chater*, 84 F.3d 1397 (11th Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983).

In determining whether substantial evidence exists, this court must scrutinize the record in its entirety, taking into account evidence both favorable and unfavorable to the Commissioner's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988); *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir.1987). "Even if the Court finds that the evidence weighs against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence." *Allen v. Schweiker*, 642 F.2d 799,800 (5th Cir.1981); *see also Harwell v. Heckler*, 735 F.2d 1292 (11th Cir.1984); *Martin v. Sullivan*, 894 F.2d 1520 (11th Cir.1990).

This court must also be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993). However, no such presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F. 2d 1233, 1235 (11th Cir. 1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). Furthermore, the Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper

legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

When making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d at 533; *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir.1987). When more than one impairment exists, the plaintiff may be found disabled even though none of the impairments considered alone would be disabling. *Id*. The ALJ must evaluate the combination of impairments with respect to the effect they have on the plaintiff's ability to perform the duties of work for which he or she is otherwise capable. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir.1990). Merely reciting that the plaintiff's impairments in combination are not disabling is not enough. The ALJ is required to make specific and well articulated findings as to the effect of the combination of impairments. *Walker*, 826 F.2d at 1001.

## Legal Analysis

In this case, the ALJ determined that the plaintiff had a residual functioning capacity to perform work at the "light" level of work, based solely on his own hypothetical and the state agency medical consultant. The  hypothetical was insufficient as it failed to include medically diagnosed conditions such as anxiety, arthritis, radiating pain, and back pain. No medical opinion supported the limitations

supposed by the ALJ.  No opinion regarding plaintiff's ability to perform light level work appears anywhere in the record.  There are no medical residual functional capacity (RFC) determinations regarding the plaintiff's abilities or limitations other than the one completed by the state agency medical consultant.  Therefore, nothing in the record supports the ALJ's finding that the plaintiff can perform light work.

The medical evidence does establish that the plaintiff needed to elevate her legs to minimize swelling.  The ALJ wholly ignored this evidence.  The plaintiff was treated for elbow pain, but the ALJ ignored this evidence.  The plaintiff has been diagnosed with lumbar spinal stenosis, but the ALJ ignored this evidence too. Despite the fact that spinal stenosis can certainly cause back pain, and that the plaintiff had been treated for wrist pain, the ALJ included no limitations from pain in his hypothetical. Although the plaintiff was noted to suffer from anxiety symptoms, the ALJ completely failed to mention this evidence.  Thus, the hypothetical did not reflect all of the plaintiff's limitations as required.  *See e.g., Smith v. Social Security Admin.*,  2008 WL 879980, 10 (11th Cir.2008), citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) ("to constitute substantial evidence, the VE's testimony must be based on a hypothetical posed by an ALJ which encompasses all of the claimant's impairments").  Thus, the court finds that the hypothetical to the VE was not

sufficient for purposes of establishing that the plaintiff could return to any of her prior employment.

"An ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled." *Davis v. Shalala,* 985 F.2d 528, 534 (11th Cir.1993), citing *Walker v. Bowen,* 826 F.2d 996, 1001 (11th Cir.1987); *Jones v. Bowen,* 810 F.2d 1001, 1006 (11th Cir.1986); *Bowen v. Heckler,* 748 F.2d 629, 635 (11th Cir.1984).   The Eleventh Circuit stated, "it is certain that mental and psychological defects can combine with physical impairments to create total disability to perform gainful employment."  *Id.,* quoting *Bowen v. Heckler,* 748 F.2d at 634 (citing *Brenem v. Harris,* 621 F.2d 688, 690 (5th Cir.1980)).  Here, the ALJ clearly failed to do so.

No medical professional has opined that the plaintiff was exaggerating her pain or malingering.  The ALJ ignored any medical record which provided objective medical evidence in support of the plaintiff's subjective complaints of pain.  The court is of the opinion that MRIs, myelogram, CT scans and x-rays are objective medical evidence.  Osteoarthritis, bulging annuli, bilateral facet sclerosis and hypertrophy were all noted in the plaintiff's lumbar spine.

When a claimant attempts to establish disability through her own testimony concerning pain or other subjective symptoms, the court must apply a three-part "pain

standard," which requires "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain stemming from that condition; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir.2002). The ALJ must explicitly and adequately articulate his reasons if he discredits subjective testimony. *Id*. See also *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ simply states that the plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible. The ALJ offers no explanation for why he believed this to be so. The ALJ does not point to any activities of the plaintiff which would refute her claimed limitations. Rather, plaintiff's claimed limitations and her daily activities are in line with each other. This court considered in support of this conclusion that none of the plaintiff's doctors stated that the plaintiff was exaggerating her complaints.

However, there are no medical opinions regarding whether the plaintiff can perform the mental and physical requirements of any job. No evidence supports the limitations posited by the ALJ, but there is also not sufficient evidence in the record

14

from which this court can find that the substantial evidence mandates a finding of disability.

The Commissioner has a duty to develop a full and fair record.  *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11ᵗʰ Cir.1990).  This did not occur in this case.  Sorely lacking from the extensive medical records is any medical opinion as to how the plaintiff's numerous impairments impact her ability to engage in a variety of everyday activities.  This could and should have been addressed through a consultative evaluation.  This court cannot conclude that the ALJ's finding that the plaintiff can perform her past relevant work is supported by substantial evidence.  Records in evidence at the time the ALJ rendered his decision support a conclusion that the plaintiff does have significant limitations.

The failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.  *Cornelius*, 936 F.2d at 1145-46.  Given the evidence before this court, the court is unable to determine that the proper legal analysis has been conducted.  As such, this court must reverse the decision of the ALJ.  The court remands this case to the ALJ for further consideration of the evidence, proper application of the law, and further development of the record consistent with this opinion.

15

**Conclusion**

Based on the lack of substantial evidence in support of the ALJ's findings, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Agency for further action consistent with this opinion, to include a consultative examination or a physical capacities evaluation completed by one or more of the plaintiff's several treating physicians.   Thereafter, a supplemental hearing with a VE for further testimony, to include hypotheticals containing the plaintiff's allegations of pain and limitations from repetitive hand use, and limitations from mental impairments should be held.

**DONE** and **ORDERED** this the 26th day of June, 2008.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE